IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          **Plaintiff,**

vs.                                     Cr. No.  11-2547 JCH

ROSITA BARRIOS-MORALES,

          **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion to Suppress Evidence and Statements* [Doc. No. 17], filed November 29, 2012.  On February 28, 2012, the Court held an evidentiary hearing at which Defendant was present and represented by Phillip Medrano.  Raul Torrez represented the Government.  After reviewing the briefs, the evidence, and the applicable legal authorities, the Court concludes that the motion to suppress should be denied.

## FINDINGS OF FACT

On September 9, 2011, Drug Enforcement Administration Special Agent Jarrell Perry was at the Greyhound Bus Station to meet the eastbound bus scheduled to stop in Albuquerque at 10:00 a.m.  While he was there, he saw that there was a second bus in the terminal.  After speaking to Greyhound employees, Agent Perry learned that the bus was supposed to have departed Albuquerque at 3:50 a.m., heading east, but it had broken down and was still in the terminal.  Agent Perry boarded that bus and walked to the rear, where he began conducting consensual encounters with passengers.  He was not in uniform, but rather wearing plain clothes.  Agent Perry was armed, but his weapon was not visible.  Furthermore, Agent Perry was the only law enforcement officer

present.  He spoke to passengers in turn, displaying his badge, identifying himself as a police officer, and asking for permission to speak to them.  Agent Perry recorded his conversations with the passengers on the bus, and that recording (Exhibit 1) reveals that he used a calm, conversational tone of voice at all times.  He identified himself to passengers, asked them about their travel plans, and occasionally asked for consent to search their bags for contraband.

After speaking to a few other passengers, Agent Perry approached the Defendant, Rosita Barrios-Morales, who was sitting in a window seat several rows from the back.  He stood in the row behind her seat so that he did not block her access to the aisle.  Agent Perry greeted Plaintiff in English, and when she did not respond, he repeated himself.  She still did not answer, so he asked her if she spoke English.  In Spanish Defendant said, "A little bit."  Switching to Spanish, Agent Perry then asked Defendant if she spoke Spanish.  He displayed his DEA badge to her and, speaking Spanish, identified himself as a police officer.  While continuing to speak Spanish, Perry asked for permission to speak with Defendant.  She replied "uh-huh," and nodded her head.  He inquired about her destination, and she said "Oklahoma."  Agent Perry asked Defendant where she was traveling from, and she said "Arizona."  He asked where in Arizona, and she replied "Tucson."  Agent Perry asked Defendant if she had any luggage with her, and in response she pointed out a small duffel bag that was lying on the floor near her feet.  Agent Perry then asked Defendant if she lived in Arizona or Oklahoma, and she said "Arizona."  Agent Perry asked for permission to search her duffel bag for contraband.  In response, Defendant said "yes" and picked up her bag, placing it in the empty aisle seat directly beside her.  Agent Perry asked, "This one?" to which Defendant replied, "Yes." Perry searched the bag and found no contraband.  While searching her bag, Perry asked Defendant how long she would be staying in Oklahoma, and she replied, "One week."  Perry left the bag on the seat next to Defendant.

Agent Perry observed that Defendant had a purse, pillow, and blanket lying in the seat with her, and that the blanket was covering her legs and waist.  First, he asked to search the pillow by pointing at it and saying "and your pillow?"  Defendant did not respond verbally, but instead handed the pillow to him.  Agent Perry searched the pillow by squeezing it and, feeling nothing unusual, handed it back to her.  Then Agent Perry pointed at the purse sitting on the seat next to Defendant, asking if it was hers.  Again, Defendant did not answer verbally, but she picked up the purse and handed it to Agent Perry.  He searched the purse, found no contraband, and handed it back to the Defendant.  Next, Perry asked Defendant if she had any luggage underneath the bus, and she said "No."  Then, Agent Perry asked if he could search Defendant's blanket for contraband.  Again, she consented by handing the blanket to him.  His search of the blanket yielded no contraband, and he handed it back to Defendant.  None of the other passengers that Agent Perry spoke to on the bus was wearing a blanket.

Perry noticed that Defendant was wearing jeans and a black zippered hoodie, along with several shirts underneath, even though it was not cold.  He asked Defendant if she had anything on her person, to which she responded, "Excuse me?"  Agent Perry then asked if she had any handguns or weapons on her person, to which she responded, "No."  Agent Perry then asked Defendant if he could search her for contraband, patting his own body in illustration.  In response Defendant stood up, stepped in front of the empty aisle seat directly beside her, and turned facing the aisle of the bus. She raised her arms parallel to the ground, palms down.  Agent Perry first searched her mid-section, where he felt a hard bundle concealed under her clothing just above her belt.  From his training and experience, it felt to Agent Perry like the packaging of illegal narcotics that he had seen strapped or taped onto bus passengers on numerous other occasions.  In fact, Agent Perry had previously arrested individuals on the bus or train who had strapped contraband to that location on their bodies.

3

Immediately after Agent Perry felt her abdomen, Defendant sat back down in her window seat. So, Perry again asked Defendant if he could search her person, while he pointed to her abdomen. In response Defendant again stood up in front of the aisle seat with her arms out, but this time she turned facing the window. Agent Perry attempted to show her that he wanted her to turn back toward the aisle by saying in a mix of English and Spanish, "No no no, aqui. . . Can you return aqui?" and patting his own mid-section. Defendant did not turn toward him, so he reached around her body to feel her stomach area. Agent Perry again felt the hard bundle on her abdomen, and he began lifting up the lower portion of the various shirts she was wearing. Then, Defendant began to move away from Perry. Agent Perry placed Defendant in handcuffs and lifted her shirts to reveal a gray bundle duct-taped to her abdomen. Agent Perry called the Albuquerque DEA office for help transporting the Defendant. A clear crystal substance found inside the bundle field-tested positive for the presence of methamphetamine.

On September 27, 2011, the Government filed an Indictment charging Defendant with possession with intent to distribute 50g and more of a mixture containing methamphetamine. On January 28, 2012, the Government filed a superceding indictment charging her with possession with intent to distribute 50g and more of methamphetamine. In her motion to suppress, Defendant does not challenge Agent Perry's searches of her duffel bag, pillow, purse, or blanket, but only the search of her person. Defendant seeks to suppress not only the controlled substance found in the bundle taped to her stomach, but also incriminating statements she made after Agent Perry took her to the DEA office.

## DISCUSSION

## I.     CONSENT TO SEARCH DEFENDANT'S PERSON

Defendant argues that while she gave Agent Perry permission to search her duffel bag,

pillow, blanket, and purse, she never gave him consent to search her person.   Thus, she argues that

his search of her body was not consensual, and that it exceeded the scope of the consent she did give

him to search her personal effects.

A search conducted pursuant to valid consent is constitutionally permissible.  *Schneckloth*

*v. Bustamonte*, 412 U.S. 218, 222 (1973).  "Consent to search is valid if it is voluntarily given."

*United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986).  "The voluntariness of consent must

be determined from the totality of the circumstances, and the government bears the burden of proof

on the issue."  *United States v. Orrego–Fernandez*, 78 F.3d 1497, 1505 (10th Cir. 1996) (quotations

omitted).  To sustain its burden, the government must demonstrate there was no duress or coercion

(express or implied), the consent was unequivocal and specific, and it was freely and intelligently

given.  *Id*. at 1505.

> In determining whether a consent to search was free from coercion,
> a court should consider, inter alia, physical mistreatment, use of
> violence, threats, threats of violence, promises or inducements,
> deception or trickery, and the physical and mental condition and
> capacity of the defendant within the totality of the circumstances. An
> officer's request for consent to search does not taint an otherwise
> consensual encounter as long as the police do not convey a message
> that compliance with their request is required.

*United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998) (quotation omitted).  "Failure to inform

a defendant that he was free to leave or that he could refuse consent are [also] important factors in

our consideration."  *Orrego–Fernandez*, 78 F.3d at 1505 (quotations omitted).

Based on the evidence before it, the Court concludes that Defendant voluntarily consented

to Agent Perry's consent to search her person.  There is no evidence of the use of coercion, physical

mistreatment, violence, threats, promises, inducements, deception or trickery against Defendant.

Agent Perry was the sole law enforcement officer on the bus, he was not wearing a uniform, and he

did not brandish his weapon.  At all times, he used a normal tone of voice and exhibited a calm demeanor.  In addition, he returned each of Defendant's possessions to her after he searched it, and therefore he retained nothing belonging to her at the time he asked for permission to search her person.  Although Agent Perry did not specifically inform Defendant that she was free to leave the bus, he stood in a manner to avoid blocking her access to the aisle and the open doorway of the bus such that a reasonable person would feel free to leave.  Indeed, Defendant acknowledged during her testimony that when Agent Perry was asking to search her abdomen, she believed that she could have left the bus at that time.  Finally, Defendant appears to be a person of normal intelligence who suffers from no physical or mental condition that would interfere with her ability to give voluntary consent.     The Court concludes that in response to Agent Perry's request to search her person, Defendant stood up and voluntarily lifted her arms to give him access to her mid-section, and that by doing this Defendant implicitly gave Perry voluntary consent to search her person.  Defendant's actions were consistent with her responses to Agent Perry's prior requests to search her bag, pillow, purse and blanket—responses in which she concedes she acquiesced to his requests.  Furthermore, the Court concludes that once Agent Perry felt the hard bundle on Defendant's abdomen as a result of her voluntary consent to his search, he had probable cause to arrest her.

## II.     Investigative Detention Requiring Reasonable Suspicion

Alternatively, Defendant argues that her interaction with Agent Perry began as a consensual encounter but then became an investigative detention for which he lacked reasonable suspicion.  The Government, in turn, contends that no detention ever occurred, but rather that what began as a consensual encounter remained as such until Agent Perry's search yielded probable cause to arrest the Defendant.

"Merely approaching an individual in a public place and asking questions of the individual, including asking to examine the person's identification or requesting the person's consent to search his or her luggage is not a seizure implicating the Fourth Amendment." *United States v. Evans*, 937 F.2d 1534, 1537 (10th Cir. 1991). However, "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (quotation omitted)). *INS v. Delgado*, 466 U.S. 210, 215 (1984). Further, it is settled that "the nature of the police-citizen encounter can change—what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa." *United States v. Zapata*, 997 F.2d 751, 756 n. 3 (10th Cir. 1993). The Tenth Circuit has enumerated a non-exhaustive list of circumstances to be considered in determining whether a police-citizen encounter amounts to a seizure:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005) (quotation omitted). Although no single factor is dispositive, the "strong presence of two or three factors" may be sufficient to support the conclusion a seizure occurred. *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir. 2006) (quotation omitted).

For the same reasons previously discussed above, the Court concludes that the consensual

encounter between Agent Perry and the Defendant did not become an investigative detention requiring reasonable suspicion.  Agent Perry, acting alone, conducted the encounter in a public place in front of other bus passengers.  He did not physically restrain Defendant, he was wearing plain clothes, he did not display his weapon or use a commanding tone of voice, and he did not retain Defendant's personal effects.  While Agent Perry did not specifically advise Defendant that she had the right to terminate the encounter or refuse consent to search her person, this factor alone is not dispositive.  The Court finds that under the totality of the circumstances, this remained a consensual encounter until Agent Perry felt the hard bundle on Defendant's midsection and thereby obtained probable cause to arrest her.

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Suppress Evidence and Statements* [Doc. No. 17] is **DENIED**.


_____
**UNITED STATES DISTRICT JUDGE**